**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| MARIBEL RAMIREZ, individually and on behalf of all others similarly situated,<br><br>　　Plaintiff,<br><br>v.<br><br>MEREDITH COMMUNICATIONS, INC.,<br><br>　　Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>(JURY TRIAL DEMANDED) |

　　Plaintiff Maribel Ramirez ("Plaintiff"), individually and on behalf of herself and all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## INTRODUCTION

　　1.　　Unsatisfied with publishing and advertising revenue alone, Defendant Meredith Corporation ("Meredith") sold and continues to sell subscriber mailing lists containing Plaintiff's and the other Class members' names and likenesses, along with other highly sensitive personal information, to various parties on the open market, including to data miners, data aggregators, data appenders, data cooperatives, list brokers, aggressive marketing companies, and various other third parties.  The lists Meredith sold identified, by name, address, and other personal attributes, Plaintiff and every other Puerto Rico subscriber to its various magazine publications, including *Allrecipes* and *Real Simple* magazines to which Plaintiff subscribed.  Meredith's monetization of Plaintiff's and its other Puerto Rico subscribers' names and likenesses in this way was done in direct violation of Puerto Rico's Right of Publicity Act, 32 L.P.R. § 3151, *et seq.* (the "PRRPA").

　　2.　　Documented evidence confirms these facts.  For example, Meredith, either directly or through one or more intermediary acting on its behalf and at its direction, and during the time period relevant to this action, has knowingly advertised to the community at large, and sold to various members of the public interested in purchasing, the mailing list titled "Real Simple

Magazine Mailing List", which contains the full name, home address, and title of the publication subscribed to (collectively "Personal Reading Information") – as well as myriad other personally identifying attributes and demographic information such as gender, age, and income—of each of the 875,280 active U.S. subscribers to *Real Simple* magazine (including Plaintiff and each member of the Class) at a base price of "$115.00/M [per thousand]," (i.e., 11.5 cents apiece), as shown in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit A** hereto.

3. Meredith's practices of knowingly selling mailing lists on which each of its subscribers is identified by name and likeness is not limited to *Real Simple* magazine, but also concern *Allrecipes* magazine and each of its other publications as well. Meredith, either directly

2
CLASS ACTION COMPLAINT

or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), and during the time period relevant to this action, has also knowingly advertised and sold to various parties the mailing list titled "Meredith Database – Masterfile Mailing List", which contains the Personal Reading Information of all 14,989,713 active U.S. subscribers to all of Meredith's various publications, among them Plaintiff and each member of the Class, at a base price of "$115.00/M [per thousand]," (i.e., 11.5 cents apiece), as shown in pertinent part in the screenshot below from list broker NextMark, Inc.'s website:



*See* **Exhibit B** hereto.

    4.      The PRRPA clearly prohibits what Meredith has done.  Section 3152 of the PRRPA states, in pertinent part:

> Any natural or juridical person who uses another's likeness for

> commercial, trade, or advertising purposes without the previous consent of said person, the person who possesses a license for said likeness, his/her heirs if the person is deceased, or the authorized agent of any of the forgoing shall be liable for damages.

32 L.P.R. § 3152. The term "likeness" means, *inter alia*, a person's "name," and the term "commercial purpose" is defined as "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market." 32 L.P.R. § 3152(h). Meredith directly violated the PRRPA by knowingly, and with reckless disregard for the PRRPA, using Plaintiff's and the Class members' names and other personally identifying attributes "in connection with . . . [the] sale of a product, merchandise, [or] good . . . in the market" – namely, the subscriber mailing lists that it sells identifying Plaintiff and the other Class members as subscribers of its publications, without any of these individuals' prior consent.

5. Indeed, the PRRPA was enacted to recognize each Puerto Rico resident's right of publicity. Meredith has deprived Plaintiff and Class members of this right by surreptitiously selling mailing lists on which all Puerto Rico subscribers to its publications are identified by name and other personally identifying attributes, without notifying much less obtaining consent from Plaintiff and Class members prior to engaging in these practices.

6. Meredith's practices of monetizing its subscribers' names and other personally identifying attributes for commercial purposes without authorization is not only unlawful, it is also dangerous because it allows any member of the public willing to purchase this data to target particular subscribers, including vulnerable members of society, using their identities, interests and other demographic data. For example, anyone could buy a customer list provided by Meredith that contains the names and addresses of all women over the age of 50 who live in Puerto Rico, earn over $100,000 per year, and subscribe to *Real Simple* magazine. Such a list is available for sale on the open market for approximately $166.00 per thousand subscribers listed.

7. So while Meredith profits handsomely from the use of its customers' names and other personally identifying attributes in this way, it does so at the expense of its Puerto Rico customers' statutory rights of publicity. Accordingly, Plaintiff brings this Class Action Complaint against Meredith for its knowing and plainly unlawful use of its customers' names and likenesses

in reckless disregard of their statutorily protected rights under the PRRPA.

## PARTIES

8. Plaintiff Maribel Ramirez is, and at all times relevant to this action has been, a living, natural person and a resident and citizen of Puerto Rico. Plaintiff subscribed, including during the time period relevant to this action, to Meredith's *Allrecipes* and *Real Simple* magazines while residing in, a citizen of, and physically present in Puerto Rico.

9. Defendant Meredith Corporation is an Iowa corporation with its headquarters and principal place of business in Des Moines, Iowa. Meredith is registered to do and does business throughout the entire United States. Meredith is the publisher of, among others, the magazines *Better Homes & Gardens, Living the Country Life, Entertainment Weekly, Food & Wine, Health, Midwest Living, People, Parents, Real Simple, Shape, Southern Living, Travel + Leisure, Wood, FamilyFun, Rachel Ray in Season*, and *InStyle*.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

11. The Court has personal jurisdiction over Meredith because Meredith maintains its corporate headquarters and principal place of business in Des Moines, Iowa.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Meredith is subject to personal jurisdiction in this judicial District, because Meredith resides in this judicial District, and because a substantial part of the events giving rise to Plaintiff's claims took place within this judicial District.

## FACTUAL BACKGROUND

### *Puerto Rico's Right of Publicity Act*

13. Recognizing the need to protect its citizens' rights of publicity, the Puerto Rico legislature enacted the PRRPA to establish as a matter of law that each resident of Puerto Rico has

5
CLASS ACTION COMPLAINT

Case 4:21-cv-00344-SMR-HCA   Document 1   Filed 11/04/21   Page 6 of 15

the right of publicity in his or her name and likeness, among other identifying attributes.

14. The PRRPA prohibits companies like Meredith from, *inter alia*, using an individual's name or likeness, in any manner, on or in a product, good, or a piece of merchandise. *See*. Specifically, the PRRPA states, in pertinent part:

> Any natural or juridical person who uses another's likeness for commercial, trade, or advertising purposes without the previous consent of said person, the person who possesses a license for said likeness, his/her heirs if the person is deceased, or the authorized agent of any of the forgoing shall be liable for damages.

32 L.P.R. § 3152. The term "likeness" means a "[n]ame, photograph, portrait, voice, signature, attribute or any representation of a person through which an average observer or listener may identify the same, produced using any reproduction procedure or technique." 32 L.P.R. § 3152(c). "Commercial purpose" is defined as "[t]he use of a person's likeness in connection with an advertisement, offer, or sale of a product, merchandise, good or service in the market." 32 L.P.R. § 3152(h).

15. "The law provides for both injunctive relief and compensatory damages to a plaintiff who sues for misappropriation or violation of the right of publicity." 32 L.P.R. § 3153. In lieu of actual compensatory damages, a prevailing plaintiff may seek "in an amount of no less than $750 and no greater than $20,000 per violation, as deemed to be fair by the court. Whenever a violation is determined to be deliberate or due to gross negligence, the court may freely increase the amount of statutory damages to a sum no greater than $100,000 per violation." *See id.*

16. Despite the fact that thousands of Puerto Rico residents subscribe to Meredith's various publications, Meredith disregarded its legal responsibilities to these individuals by selling on the open market subscriber mailing lists that contained, *inter alia*, all of its Puerto Rico customers' names and various other personally identifying attributes without their consent, in direct violation of the PRRPA.

*Meredith Unlawfully Sells Mailing Lists Containing its Puerto Rico Customers' Names and Likenesses, as well as their Addresses, and Other Personal Reading Information*

17. Meredith maintains a vast digital database comprised of its customers'

CLASS ACTION COMPLAINT

information, including their names, addresses, and various other forms of personally identifying and highly sensitive Personal Reading Information.

18. Meredith, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly, and with reckless disregard for the PRRPA, sold during the relevant time period, and continues to sell to this day, lists on which its customers' names, addresses, and other Personal Reading Information appear. Meredith has sold and continues to sell these lists on the open market to anyone willing to pay for them, including on a regular basis to data miners, aggregators, appenders, and cooperatives, aggressive marketing companies, and other consumer-facing businesses. The name and address (among other personally identifying attributes) of each subscriber appears on the lists that Meredith has sold (and continutes to sell), and the lists identify each such person as having purchased a subscription(s) to a particular magazine(s) from Meredith.

19. As a result of Meredith's data compiling and sales practices, any member of the public can purchase subscriber mailing lists from Meredith on which Plaintiff's and the other Class members' names and likenesses appear. Meredith's practices of selling and offering to sell mailing lists in connection with its subscribers' names and other personally identifying attributes in this way puts these consumers, especially the more vulnerable members of society, at risk of serious harm from scammers.

20. Meredith does not seek its customers' prior consent to any of these practices and its customers remain unaware that their names and other personally identifying attributes, including their addresses and other sensitive Personal Reading Information (including information identifying the particular publication to which each of them subscribed), are used by Meredith in connection with the subscriber mailing lists that the company has sold and continues to sell on the open market to any member of the public interested in purchasing them.

21. Consumers can subscribe to Meredith's publications through numerous media outlets, including the Internet, telephone, or traditional mail. Regardless of how the consumer subscribes, Meredith uniformly fails to obtain consent from—or even provide effective notice to—

its customers before engaging in the practices described herein.

22.    By and through these actions, Meredith has intentionally used Plaintiff's and numerous other Puerto Ricans' "names" and other personally identifying "attribute[s]" "in connection with . . . [the] sale of a product, merchandise, [or] good," i.e., both the mailing lists Meredith sold to third parties and the magazine subscriptions previously sold to each of these individuals – without any of their "previous consent," in direct violation of the PRRPA. *See* 32 L.P.R. § 3151(c), (f), (h); 32 L.P.R. § 3152.

## CLASS ACTION ALLEGATIONS

23.    Plaintiff seeks to represent a class defined as:

> All Puerto Rico residents who, at any point in the applicable statutory period, had their names appear on or in a mailing list sold by or on behalf of Meredith (the "Class").

24.    Members of the Class are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the records of Defendant.

25.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to: (a) whether the subscriber mailing lists that Meredith sold on the open market to various third parties are "products, merchandise, or goods" within the meaning of the PRRPA; (b) whether the magazine subscriptions that that Meredith sold to Plaintiff and Class members are "products, merchandise, or goods" within the meaning of the PRRPA; (c) whether Meredith used Plaintiff's and the Class's "name[s]" or other personally identifying "attribute[s]" "in connection with . . . [the] sale of" such subscriber mailing lists and/or magazine subscriptions; (c) whether Meredith obtained "previous consent" from Plaintiff and Class members to use their "name[s]" or other personally identifying "attribute[s]" in connection with the sale of such subscriber mailing lists and/or subscriptions; (d) whether Meredith's practices of selling such

subscriber mailing lists violated the PRRPA; (e) whether Meredith's violations of the PRRPA were knowing, "deliberate or carried out with malicious intent," or "due to gross negligence"; and (f) the appropriate amount of damages to which Plaintiff and Class members are entitled as a result of Meredith's violations of the PRRPA.

26. The claim of the named Plaintiff is typical of the claims of Class members in that the named Plaintiff and the Class were injured and sustained damages by Defendant's uniform wrongful conduct, based upon Defendant's practices of using Plaintiff's and Class members' names and other personally identifying attributes in connection with its sales of subscriber mailing lists sold to third parties on the open market and/or in connection with magazine subscriptions previously sold to Plaintiff and Class members.

27. Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

28. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of such issues.

## CLAIM FOR RELIEF
### Violation of the Puerto Rico Right of Publicity Act, 32 L.P.R. § 3151, *et seq.*
### (By Plaintiff on Behalf of Herself and the Class)

29. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

30. Plaintiff brings this claim individually and on behalf of members of the above-defined Class against Defendant.

31. Plaintiff is a natural person and therefore a "person" within the meaning of the PRRPA. *See* 32 L.P.R. § 3151(f).

32. Meredith is a corporation and thus a "juridical person" within the meaning of the PRRPA. *See id.* & 32 L.P.R. § 3152.

33. Plaintiff, a Puerto Rico resident, subscribed to Meredith's *Allrecipes* and *Real Simple* magazines. Each member of the Class likewise resides in Puerto Rico and subscribed to one or more Meredith publications.

34. At no time before or at the time Plaintiff purchased subscriptions to *Allrecipes* and *Real Simple* magazines did Meredith notify Plaintiff that it would use her name or other personally identifying attributes "in connection with . . . [the] sale of a product, merchandise, [or] good" by selling subscriber mailing lists on which her name and other personally identifying attributes appeared (including home address and title of the Meredith publication subscribed to—as well as myriad other personal and demographic information such as gender, age, and income). *See* 32 L.P.R. § 3152 & 32 L.P.R. § 3151(c), (h). Plaintiff has never consented to Meredith using her name or other personally identifying attributes for commercial purposes in this way. *See id.* Meredith likewise failed to notify any of its other subscribers, including the members of the Class, that it would use their names or other personally identifying attributes "in connection with . . . [the] sale of a product, merchandise, [or] good" by selling subscriber mailing lists on which their names and other personally identifying attributes appeared (including home addresses and titles of the Meredith publications subscribed to—as well as myriad other personal and demographic information such as gender, age, and income). *See* 32 L.P.R. § 3152 & 32 L.P.R. § 3151(c), (h).

And none of the members of the Class consented to Meredith using their name or other personally identifying attributes for commercial purposes in this way. *See id.*

35. After Plaintiff subscribed to *Allrecipes* and *Real Simple* magazines from Meredith, and during the relevant statutory period, Meredith, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly, deliberately, and with reckless disregard for the PRRPA, sold mailing lists containing Plaintiff's name and other personally identifying attributes (among other identifying and highly sensitive Personal Reading Information, which, *inter alia*, identified her as an individual to whom Meredith had sold *Allrecipes* and *Real Simple* magazine subscriptions) to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first obtaining Plaintiff's consent or even giving her prior notice of its use of her name and other personally identifying attributes in this way.  Likewise, during the statutory period relevant to this action, Meredith knowingly, deliberately, and with reckless disregard for the PRRPA, sold mailing lists containing the names and likenesses of the members of the Class (among other identifying and highly sensitive Personal Reading Information) to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first obtaining consent to these practices from, or even providing prior notice to, any of these individuals.

36. "Maribel Ramirez," which Meredith used on the subscriber mailing lists that it has sold and continues to sell, is the "name . . . through which an average observer or listener may identify" Plaintiff.  32 L.P.R. § 3151(c).  Moreover, the other personally identifying information pertaining to Plaintiff that Meredith included on the subscriber mailing lists that it sold – including her address, gender, age, and income – also constituted, individually or collectively, "attribute[s] or . . . representation[s]" of Plaintiff "through which an average observer or listener may identify" Plaintiff.  *See id.*  Accordingly, by and through the actions alleged herein, Meredith used Plaintiff's "likeness" within the meaning of the PRRPA. *See id.*

37. Significant commercial value exists in the aspects of Plaintiff's and Class

members' likenesses that Meredith used and continues to use in connection with its sales of subscriber mailing lists.

38. The subscriber mailing lists that Meredith knowingly, deliberately, and with reckless disregard for the PRRPA sold and continues to sell, on the open market to anyone interested in purchasing them, constitute "product[s], merchandise, [or] good[s]" within the meaning of the PRRPA. *See* 32 L.P.R. § 3151(h).

39. Because the subscriber mailing lists that Meredith sold and continues to sell contained Plaintiff's and Class members' names and other personally identifying attributes, and identified each such person as having been previously sold a subscription to a particular Meredith publication, Meredith used Plaintiff's and Class members' names and other identifying attributes "in connection with" its sales of such subscriber mailing lists (as well as in connection with the past sales of magazine subscriptions to Plaintiff and Class members). *See* 32 L.P.R. § 3151(h). Accordingly, Meredith used Plaintiff's and Class members' likenesses for "commercial purposes" or for "trade purposes" within the meaning of the PRRPA. *See id.*

40. As alleged above, Meredith failed to obtain the "previous consent" of Plaintiff or any member of the Class prior to using their "likenesses" for "commercial purposes" in the manner alleged herein. *See* 32 L.P.R. § 3152 & 32 L.P.R. § 3151.

41. By and through these actions, Meredith knowingly, deliberately, and with reckless disregard for the rights of Plaintiff and Class members, "use[d] [Plaintiff's and Class members'] likeness[es] for commercial [or] trade . . . purposes without the previous consent of said person[s]," in direct violation of the PRRPA. *See* 32 L.P.R. § 3152.

42. Meredith's nonconsensual use of Plaintiff's and Class members' likenesses in connection with the subscriber mailing lists that it sells, as alleged herein, did not constitute uses "as part of a news report, political expression, sporting, or artistic event transmission, or presentation with a legitimate public interest, and where said likeness is not used with commercial or publicity purposes." 32 L.P.R. § 3157(a).

43. Meredith acted with "[t]otal carelessness or failure to adhere to a minimal standard

of care that raises a presumption of indifference to consequences, implying reckless disregard," in the course of using, without consent, Plaintiff's and the other Class members' likenesses in connection with its sales of the subject subscriber mailing lists. *See* 32 L.P.R. § 3151(h). Indeed, during the time period relevant to this action, Meredith, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), directed and oversaw the compilation and assembly of the subject subscriber mailing lists from its customer database, the use of Plaintiff's and Class members' likenesses in connection with such subscriber mailing lists, the advertising of such subscriber mailing lists on the open market, and the actual sales of such subscriber mailing lists to various third parties. Plaintiff is informed and believes that Meredith reaped significant monetary profits through its sales of subscriber mailing lists on or in which Plaintiff's and the other Class members' names and likenesses appeared.

44. Moreover, Meredith had every "reason for knowing or believing that [its] activities," as alleged here, "constituted a violation of the plaintiff's publicity rights," *see* 32 L.P.R. § 3153, because Meredith, on information and belief, was aware of the existence of and the rights afforded under Puerto Rico's PRRPA and the various other states' and territories' right of publicity statutes, and understood and appreciated that its conduct, as alleged herein, was and continues to be undertaken in violation of said statutes. Meredith has nonetheless refused to cease using its subscribers', including its Puerto Rico subscribers', likenesses for commercial purposes without their consent in the manner described herein.

45. Plaintiff brings this action within "one (1) year following the date on which she first became aware or should have gained knowledge of the occurrence of the facts that constitute grounds for [the] cause of action [alleged herein] and serves as the foundation for such action or procedure." 32 L.P.R. § 3156.

46. Plaintiff and the members of the Class have been injured, in Puerto Rico, from the violations of their rights of publicity that they suffered as a result of Meredith's nonconsensual use of their names and likenesses in the manner described herein. On behalf of herself and the Class,

Plaintiff seeks: (1) statutory damages of $100,000 per violation of the PRRPA determined to be deliberate or due to gross negligence (or of $20,000 per violation of the PRRPA not determined to be deliberate or due to gross negligence), or, alternatively and in the court's discretion, of an amount not less than $750.00 per violation of the PRRPA, for herself and each Class member pursuant to 32 L.P.R. § 3153; (2) a declaration that Defendant's conduct described herein violates the PRRPA pursuant to 32 L.P.R. § 3153; (3) an injunction prohibiting Defendant from further using Plaintiff's and Class members' likenesses on or in the subscriber mailing lists that it sells, and requiring Defendant to obtain prior consent from Puerto Rico customers prior to doing so in the future, pursuant to 32 L.P.R. § 3153 and 32 L.P.R. § 3152; and (4) costs and reasonable attorneys' fees pursuant to pursuant to 32 L.P.R. § 3153.

## **PRAYER FOR RELIEF**

47. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks a judgment against Defendant as follows:

    A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

    B.    For a declaration, pursuant to 32 L.P.R. § 3153, that Defendant's conduct described herein violates the PRRPA;

    C.    For an order finding in favor of Plaintiff and the Class on the count asserted herein;

    D.    For an award of statutory damages of $100,000 per violation of the PRRPA determined to be deliberate or due to gross negligence (or of $20,000 per violation of the PRRPA not determined to be deliberate or due to gross negligence), or, alternatively and in the court's discretion, of an amount not less than $750.00 per violation of the PRRPA, for herself and each Class member, pursuant to 32 L.P.R. § 3153;

    E.    For an injunction, pursuant to 32 L.P.R. § 3153 and 32 L.P.R. § 3152, prohibiting Defendant from further using Plaintiff's and Class members' likenesses on or

in the subscriber mailing lists that it sells, and requiring Defendant to obtain prior consent from Puerto Rico customers prior to doing so in the future;

   F. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit pursuant to 32 L.P.R. § 3153; and

   G. For prejudgment interest on all amounts awarded.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: November 3, 2021   Respectfully submitted,

By: /s/ J. Barton Goplerud
J. Barton Goplerud AT0002983
Gary W. Kendell AT0004203
SHINDLER, ANDERSON,
GOPLERUD & WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa 50265-5749
Tel: (515) 223-4567
Fax: (515) 223-8887
Email: goplerud@sagwlaw.com
   kendell@sagwlaw.com

*Local Counsel for Plaintiff and the Putative Class*

Frank S. Hedin*
fhedin@hedinhall.com
Arun G. Ravindran*
aravindran@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801

* *Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiff and the Putative Class*